(No. 13501.—Judgment affirmed.)

WILLIAM P. WHEELER, Defendant in Error, vs. THE CITY
OF LEROY, Plaintiff in Error.

*Opinion filed February 15, 1921—Rehearing denied April 7, 1921.*

1. NEGLIGENCE—*effect of the refusal to direct a verdict of not guilty—review.* On review of a judgment of the Appellate Court in an action for negligence the Supreme Court cannot weigh the evidence, and a refusal of the trial court to give an instruction directing a verdict of not guilty presents only the question of law whether there is evidence in the record which, taken with all its reasonable inferences, would be sufficient in law to support the cause of action.

2. EVIDENCE—*what statement should not be regarded as an admission.* In an action against a city for damages for an injury to a thirteen-year-old boy, who was thrown from and run over by a wagon because of an alleged defective pavement, a statement claimed to have been made to a doctor shortly after the injury by the boy's father, who was not present at the accident, that if the boy had not been making a fool of himself he would not have been hurt, is not competent as an admission by the boy on the theory that though made in his presence he did not deny it, and if the boy testifies the statement was not made the doctor's testimony that it was made is not admissible to impeach the boy's testimony.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of McLean county; the Hon. SAIN WELTY, Judge, presiding.

LESLIE J. OWEN, and STONE & DICK, for plaintiff in error.

FRANK GILLESPIE, WILLIAM R. BACH, and COSTIGAN & WOLLRAB, for defendant in error.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

The defendant in error, William P. Wheeler, suing by James B. Wheeler, his father and next friend, brought his action on the case in the circuit court of McLean county

against the plaintiff in error, the city of LeRoy, to recover damages for a personal injury alleged to have been caused by the negligence of the defendant in permitting one of its streets to be out of repair and in an unsafe condition, in consequence of which the plaintiff was thrown from the top of a wagon loaded with ear corn upon which he was riding and a wheel of the wagon ran over his right knee. Upon a trial there was a verdict for the plaintiff and the damages were assessed at $10,000. The plaintiff remitted $5000 and judgment was entered for the balance. Upon appeal to the Appellate Court for the Third District the judgment was affirmed, and this court granted a writ of *certiorari* for a review of the record.

At the close of the evidence the defendant asked the court to direct a verdict of not guilty and submitted an instruction giving such direction, which was refused. On review of judgments of the Appellate Court in actions at law this court is precluded from considering questions of fact, and the question raised by the refusal of the instruction is the question of law whether there is evidence in the record which, taken with all its reasonable inferences, would be sufficient in law to support the cause of action. *Foster* v. *Wadsworth-Howland Co.* 168 Ill. 514; *Jenkins* v. *LaSalle County Carbon Coal Co.* 264 id. 238; *Babbitt* v. *Grand Trunk Western Railway Co.* 285 id. 267; *Curran* v. *Chicago and Western Indiana Railroad Co.* 289 id. 111.

Cedar street, in the city of LeRoy, runs east and west and is paved with brick. Hemlock street is a dirt road running north and south, which leads into the country and connects with Cedar street at their intersection. On September 21, 1918, the plaintiff in error, William P. Wheeler, then thirteen years of age, and his brother, Lyle Wheeler, then of the age of fifteen years, and George Wagers, then thirteen years old, went to the farm of plaintiff's father at his direction and loaded a double-decked wagon with ear corn. When returning to the city along the dirt road Lyle

Wheeler was driving and the other boys were on the wagon and the team was going at a dog-trot. When the wagon reached the brick pavement on Cedar street and turned in on that street the plaintiff fell from the top of the wagon upon the pavement and suffered the injury. The charge against the defendant was that he was thrown off by reason of a hole at the edge of the brick pavement and that the existence of the hole was due to the negligence of the defendant. The disputed questions of fact were whether there was a hole which caused a jar or jolt of the wagon, and if so, whether it was of such a nature and extent as to be evidence of negligence on the part of the defendant, and whether the plaintiff was caused to fall from the wagon by the hole or in consequence of standing up on the load of corn and exercising no care for his own safety.

The evidence for the plaintiff was that the travel, particularly with automobiles, in coming off from the pavement upon the dirt road had caused a hole or depression, which the defendant in the exercise of reasonable care ought to have kept filled, but which had only been temporarily cared for by scraping a few bushels of cinders into the hole and another time putting dirt in it. The plaintiff examined eighteen witnesses on the question whether there was a hole at the place in question, and they differed very widely as to the existence of anything that could be called a hole or the depth and size of it. One of these witnesses who was at the place within a few hours after the accident and made a particular examination, testified that where the travel left the pavement there was a board about six inches wide holding the brick up and a depression probably six inches deep made by automobiles going off from the pavement; that the depression probably covered a space about three feet wide and sloped up both ways, the deepest part of the cupping-out being some distance from the edge of the pavement. Another of the witnesses for the plaintiff said that it was a little rough coming up on the pavement,

and another that the depression was not over four inches deep. Four other witnesses for the plaintiff said the depression was four or five inches deep at the lowest place, and the rest of the witnesses fixed different depths, ranging up to the testimony of the plaintiff's father and another witness, who said that there was a hole a foot and a half deep and two or three feet wide. Twenty-seven witnesses testified on the part of the defendant, who were in the habit of traveling over the place with teams or automobiles and some of whom had hauled loads of corn and grain over it, all of whom testified that they had never experienced any difficulty, and whose evidence showed such a condition that the defendant could not be charged with negligence. There had been a fair at the city of LeRoy the previous week and a great deal of travel over the place, and the evidence for the defendant was that there was no condition which was unsafe. It will be seen from this recital that there was a controverted question of fact as to the existence of any hole, and while the evidence of several witnesses for the plaintiff could not justify a conclusion that any depression was of such a nature and extent as to evidence negligence on the part of the defendant, there were witnesses from whose testimony the existence of the hole and a conclusion of negligence would follow. Although the city was not bound to keep its street free from every defect but only to use reasonable care to keep it so, and the testimony of many witnesses for the plaintiff showed that there was no neglect of duty, there were two witnesses whose testimony would sustain the cause of action, one of whom was the father of the plaintiff, so that the judgment of the Appellate Court is final as to the question of fact.

Lyle Wheeler, brother of the plaintiff, was sitting on the front of the wagon, driving the team, and George Wagers was sitting by him and their feet were hanging over the front end of the wagon. The plaintiff was on the wagon back of them, and he and the Wagers boy had been

throwing ears of corn at the telephone poles. There was evidence for the defendant that the plaintiff was standing up on the corn and throwing ears as the wagon reached the place in question. The evidence for the plaintiff was that throwing the corn ceased before the place of the accident was reached and that the plaintiff was sitting down at the side of the wagon at that time. Lyle Wheeler was a witness, and there was testimony that he said on the evening of the accident that the plaintiff was standing up on the wagon and throwing corn and that the team started and he fell off. There was also testimony that the plaintiff said that he was standing up and throwing corn from the wagon and that his brother whipped up the horses and he fell off. These statements were denied by the plaintiff and his brother, Lyle, and their testimony was that the accident did not result from the plaintiff standing up on the load of corn when his brother whipped the horses and he was thrown off by that means. In this state of the evidence the court did not err in refusing to direct a verdict, and the judgment of the Appellate Court is conclusive in this court on the questions of negligence of the defendant, the proximate cause of the accident and the care of plaintiff. *Pienta* v. *Chicago City Railway Co.* 284 Ill. 246; *Milauskis* v. *Terminal Railroad Ass'n of St. Louis,* 286 id. 547; *McFarlane* v. *Chicago City Railway Co.* 288 id. 476.

After the accident the plaintiff was taken to a house near by and a doctor was called. On the trial the plaintiff was asked if after the doctor came his father did not say, "If you had not been on the wagon making a fool of yourself and cutting up you would not have got hurt," and he denied that his father made such a statement. The defendant called the doctor as a witness and asked him whether the plaintiff's father did not say to the plaintiff, "If you hadn't been standing on the corn and cutting up you wouldn't have been injured." The evidence was offered to impeach the plaintiff, who had testified that the

statement was not made, and also as an admission of the fact because the plaintiff did not deny the statement. What the father said was not admissible except on the ground that it was not denied by the plaintiff, and that his failure to deny it amounted to an admission of the fact that he was standing on the wagon and cutting up. The plaintiff had testified that he did not know anything from the time he fell off until he was in the house and thereafter he was suffering greatly, and considering his age and condition at the time and immediately after the accident, his failure to deny the statement, if made, should not be considered an admission of the fact. The statement of fact by the father, if made, was not evidence of anything, and evidence that it was made did not tend to impeach plaintiff, because whether it was made or not was immaterial.

The jury were very fully instructed at the instance of the defendant upon every question of law involved, but two instructions presented by the defendant were refused. Instruction Z stated, in substance, that if the plaintiff and his brother were directed by their father to get the load of corn and both of them helped, and the team was not in charge of either separately, and they were engaged in a common enterprise, with equal right and equal duty of control, the negligence of each would be chargeable to the other. The defendant had offered an instruction marked Z-1 to the same effect and varying only in the language used, and the other instruction was given. It was not error to refuse the second one, and the same is true of the other instruction the refusal of which is complained of.

There is no ground upon which the judgment of the Appellate Court should be reversed, and accordingly it is affirmed.                                    *Judgment affirmed.*