LORENE HOLLEMBAEK, Plaintiff-Appellee, v. DOMINICK'S FINER FOODS, INC., Defendant-Appellant.

First District (3rd Division)   No. 84—1839

Opinion filed October 23, 1985.—Rehearing denied November 21, 1985.

774

Fredrick J. Fraterrigo and Garry M. Feiereisel, both of Fraterrigo, Best & Beranek, of Chicago, for appellant.

Scanlan & Hartigan, Ltd., of Chicago (Edmund J. Scanlan, of counsel), for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Lorene Hollembaek, brought this action to recover for injuries sustained when she slipped and fell on a wet floor while shopping in a food store owned by defendant, Dominick's Finer Foods, Inc. A jury returned a verdict in favor of plaintiff in the amount of $240,000 but reduced it to $216,000, representing the jury's allocation of plaintiff's comparative negligence in the amount of 10%. The trial court denied defendant's post-trial motion for judgment *n.o.v.* or for a new trial, and entered judgment on the verdict. On appeal, defendant contends that the trial court erred in giving the missing-witness instruction; that the court erred in restricting defendant's cross-examination of plaintiff's medical expert; that the court erred in giving plaintiff's instructions concerning defendant's duty to plaintiff and in refusing to give defendant's tendered instruction on contributory negligence; and that the court erred in denying defendant's post-trial motion.

On May 31, 1981, plaintiff and her adult daughter went grocery shopping at defendant's store. After standing in the checkout line for a few minutes, plaintiff remembered an additional item she wanted, turned to get it and fell on the wet floor. At the time plaintiff fell, defendant's employee was in the process of mopping up milk which had been spilled two or three feet from plaintiff. Several witnesses testified that the floor was wet when plaintiff fell.

Dr. Donald Miller testified for plaintiff that he had examined her at the request of her attorney in September 1983, five months prior to trial. Based on the medical history, X rays and examination of plaintiff, Dr. Miller stated that plaintiff had suffered a fracture just below the head of the femur, at the right hip joint. Five Knowles pins had been surgically inserted into the broken hip joint.

It was Dr. Miller's opinion that the head of plaintiff's femur even-

tually would die. This is a condition known as avascular necrosis and is caused by an inadequate blood supply resulting from the fracture. It requires surgical intervention, usually consisting of a partial or total hip replacement. There was no sign of the necrosis in the X rays viewed 2½ years after the occurrence. Dr. Miller believed, however, that avascular necrosis occurred in most cases involving these types of fractures, and usually occurred three to five years, and perhaps even six or seven years after the fracture occurred. Both on direct and cross-examination, Dr. Miller stated that other doctors may have opinions contrary to his.

Dr. Thomas J. Fahey, plaintiff's treating physician, testified for defendant that he had last seen plaintiff in March 1982, two years before trial. It was Dr. Fahey's opinion that only 7% to 12% of the persons having fractures similar to plaintiff's would wind up having an avascular necrosis. And of that 7% to 12%, in 90% of the cases, the symptoms would appear within two years.

Defendant initially contends that the trial court erred in giving Illinois Pattern Jury Instruction (IPI), Civil, No. 5.01 (2d ed. 1971). This is the missing-witness instruction, which permits the jury to infer that the testimony of a witness which a party failed to call would be adverse to the party when the missing witness was under the control of the party, not equally available to the other party, and no reasonable excuse for the failure to call the witness has been shown. In the present case, the absent witness was Dr. John Gleason, who had been employed by defendant to examine plaintiff in January 1984, two months before trial.

■ The giving of the missing-witness instruction is within the sound discretion of the trial court, and a reviewing court should reverse only when a clear abuse of the discretion appears of record. (*Hicks v. Hendricks* (1975), 33 Ill. App. 3d 486, 342 N.E.2d 144.) The trial court must first make a determination whether, in all likelihood, the party would have produced that witness unless the testimony was in fact unfavorable. (*Tonarelli v. Gibbons* (1984), 121 Ill. App. 3d 1042, 460 N.E.2d 464; *Feigl v. Terminal R.R. Association* (1975), 30 Ill. App. 3d 55, 332 N.E.2d 416.) Defendant here chose to call a doctor whose last examination took place two years before trial rather than the doctor it had hired to examine plaintiff only two months before trial. Because defendant was attempting to show that plaintiff's hip joint was not deteriorating with the passage of time, we find that in all likelihood defendant would have produced Dr. Gleason unless the testimony was unfavorable.

■ We find no merit in defendant's argument that Dr. Gleason

was equally available to both parties. The cases are clear that a doctor hired by defendant to examine plaintiff is under defendant's control for the purpose of testifying, and thus unavailable to plaintiff as a witness. (*Ciborowski v. Philip Dressler & Associates* (1982), 110 Ill. App. 3d 981, 443 N.E.2d 618; *Leming v. Oltman* (1967), 87 Ill. App. 2d 97, 231 N.E.2d 621; *Santiemmo v. Days Transfer, Inc.* (1956), 9 Ill. App. 2d 487, 133 N.E.2d 539.) Under these circumstances, we cannot say that Dr. Gleason was equally available to plaintiff or that he was not under defendant's control.

◼ Defendant also maintains that it had a reasonable excuse for not producing Dr. Gleason as a witness, since his testimony would have been cumulative of that of Dr. Fahey. The missing-witness instruction is not warranted when the testimony which was not presented would have been merely cumulative of the testimony already presented. (*Tuttle v. Fruehauf Corp.* (1984), 122 Ill. App. 3d 835, 462 N.E.2d 645; *Hicks v. Hendricks* (1975), 33 Ill. App. 3d 486, 342 N.E.2d 144; *Pope v. St. John's Hospital* (1970), 128 Ill. App. 2d 325, 262 N.E.2d 369.) As we have noted, Dr. Gleason examined plaintiff two months before trial and almost three years after the accident. Because of this time element, we cannot say that his testimony as to whether plaintiff had developed a condition which only appears after the passage of time would have been cumulative of the testimony of Dr. Fahey, who last examined plaintiff two years before trial.

Defendant argues, however, that certain procedural errors occurred in connection with the missing-witness instruction. When plaintiff submitted the instruction at the instructions conference, defendant objected on the ground that no proper foundation was laid in that there was no testimony in the record that plaintiff had been examined by a doctor hired by defendant. At trial, the only reference to Dr. Gleason's examination occurred when plaintiff asked Dr. Fahey: "Did [defense counsel] inform you that Lorene Hollembaek was examined in January of 1984 by a Dr. Gleason at their request?" Dr. Fahey replied: "I was told that she had been examined by a Dr. Miller and by a Dr. Gleason, *** And I was not really sure who was on whose side." Upon defendant's objection at the jury instructions conference, the trial court allowed plaintiff to reopen her case for the limited purpose of offering proof about Dr. Gleason's examination. Plaintiff then testified that she was examined by Dr. Gleason on January 6, 1984, at the request of defendant. At the same time, the trial court denied defendant's request to reopen its case for the purpose of producing Dr. Gleason as a witness.

◼ Generally, the decision whether to reopen a case for further

proofs is within the trial court's discretion and will not be interfered with by a reviewing court absent a clear abuse. (*Crothers v. La Salle Institute* (1977), 68 Ill. 2d 399, 370 N.E.2d 213; *In re Marriage of Weinstein* (1984), 128 Ill. App. 3d 234, 470 N.E.2d 551.) In considering a motion to reopen proofs, a trial court should take into account various factors, including the existence of an excuse for the failure to introduce the evidence at trial, *e.g.*, whether it was inadvertence or calculated risk; whether the adverse party will be surprised or unfairly prejudiced by the new evidence; whether the evidence is of utmost importance to the movant's case; and whether there are the most cogent reasons to deny the request. (*Crothers v. La Salle Institute* (1977), 68 Ill. 2d 399, 370 N.E.2d 213.) We cannot say that the trial court abused its discretion in allowing plaintiff to reopen her case briefly for this limited purpose. The court was merely clarifying the record regarding an evidentiary matter of utmost importance in plaintiff's case.

Defendant argues further that once the trial court allowed plaintiff to reopen her proofs defendant should have been allowed to reopen its case in order to produce Dr. Gleason as a witness. The decision by the trial court to deny defendant's request to reopen proofs is within the sound discretion of the trial court and will not be disturbed on review absent a clear abuse. (*Crothers v. La Salle Institute* (1977), 68 Ill. 2d 399, 370 N.E.2d 213; *Blackwell v. City National Bank & Trust Co.* (1980), 80 Ill. App. 3d 188, 399 N.E.2d 326.) Defendant has not demonstrated that it was caught in an unfortunate position by surprise or provided a reasonable excuse for its failure to produce Dr. Gleason as a witness. As already noted, defendant's reasoning that Dr. Gleason's testimony would have been cumulative to that of Dr. Fahey is not persuasive.

■ Furthermore, as the trial judge correctly noted, if a party could reopen its case to produce a missing witness whenever the missing-witness instruction is tendered, there would be no need for the instruction. To hold in defendant's favor on this point would mean abolishing the missing-witness instruction. This we decline to do. We believe the instruction is appropriate in situations such as this, where a party makes a trial strategy decision not to produce the doctor it had hired to examine its opponent. Unlike the plaintiff's mere inadvertence in not clarifying that plaintiff was examined by Dr. Gleason at the request of defendant, defendant took a calculated risk in choosing, as part of its trial strategy, not to produce Dr. Gleason. The trial court properly exercised its discretion in permitting plaintiff to reopen her proofs to state that she was examined by Dr. Gleason at

defendant's request while at the same time denying defendant's request to reopen proofs to offer Dr. Gleason as a witness.

Defendant next contends that the trial court improperly restricted his cross-examination of Dr. Miller, plaintiff's expert witness. Defendant attempted to cross-examine Dr. Miller about an article published by Dr. William Massie. When plaintiff objected on the ground that the Massie article had not been disclosed by defendant in discovery as requested, the trial court sustained plaintiff's objection. Defense counsel later pointed out to the court that the notice to produce had not requested any medical articles, but the trial court denied defendant's motion for a mistrial.

■ Illinois courts have abolished the rule that an expert witness can only be questioned about texts upon which he relies in forming an opinion. (*Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 211 N.E.2d 253.) The Illinois rule now allows cross-examination as to the views of recognized authorities expressed in treatises or professional periodicals. *Walski v. Tiesenga* (1978), 72 Ill. 2d 249, 381 N.E.2d 279; *Lawson v. G. D. Searle & Co.* (1976), 64 Ill. 2d 543, 356 N.E.2d 779.

■ The trial court erred in not allowing defendant to cross-examine Dr. Miller by means of the Massie article. An error in regard to evidence designed to impeach a witness, however, is not reversible error where no prejudice has occurred, and a court of review will not presume that prejudice exists. (*Mielke v. Condell Memorial Hospital* (1984), 124 Ill. App. 3d 42, 463 N.E.2d 220; *Chloupek v. Jordan* (1977), 49 Ill. App. 3d 809, 364 N.E.2d 650.) Applying these principles to the present case, we find that defendant was not prejudiced by the trial court's failure to allow it to cross-examine Dr. Miller about the Massie article.

Defendant's stated purpose was that the Massie article would have been used to elicit an admission from Dr. Miller that other doctors similarly qualified had opinions different from his about the possibility of plaintiff getting an avascular necrosis. Yet, the record clearly indicates that during cross-examination Dr. Miller repeatedly stated that other competent orthopedic surgeons had a contrary opinion to his and that they disagree frequently. Thus, defense counsel was able to elicit the desired testimony without use of the Massie article. Furthermore, the article by Dr. Massie could have been introduced by defendant during its own case. Although we recognize that this method is not as effective as impeachment, the existence of the opportunity to use the article did help in minimizing any possible prejudice. Additionally, when plaintiff later attempted to use the Massie

article to impeach one of defendant's witnesses, defendant successfully objected to the use of the article.

All of the factors in the case, defendant's successfully elicited testimony from Dr. Miller during cross-examination, defendant's unexercised opportunity to use the article during its own case, and defendant's objection to plaintiff's use of the same article, combine to abrogate any prejudicial error that might otherwise have resulted from the initial error in prohibiting defendant's impeachment effort. *Mielke v. Condell Memorial Hospital* (1984), 124 Ill. App. 3d 42, 463 N.E.2d 220; *Chloupek v. Jordan* (1977), 49 Ill. App. 3d 809, 364 N.E.2d 650.

■■ Defendant next contends that the trial court erred in refusing to give an instruction, IPI Civil 2d No. 11.01 regarding contributory negligence and erred in giving an instruction, IPI Civil 2d No. A10.04, regarding the defendant's duty. Issues not raised in a post-trial motion are waived on appeal. (*Hehir v. Bowers* (1980), 85 Ill. App. 3d 625, 407 N.E.2d 149.) Defendant did not raise these issues in its post-trial motion. Therefore, we decline to address the issues.

■■ Defendant also contends that the trial court erred in giving two instructions, IPI Civil 2d Nos. A10.04 and 120.06, which defendant claims are duplicative. It is within the sound discretion of the trial court to determine which instructions shall be given to the jury. The exercise of such discretion will not be disturbed on review unless it has been clearly abused. (*Clarkson v. Wright* (1984), 121 Ill. App. 3d 230, 459 N.E.2d 305.) No such abuse appears here. IPI Civil 2d No. A10.04 instructs the jury that a defendant has a general duty to be free from negligence, while IPI Civil 2d No. 120.06 instructs the jury as to the specific duty that a landowner owes to an invitee. Defendant has cited no case that indicates these instructions are duplicative. We therefore hold that the trial court properly used its discretion· in giving these two instructions regarding the defendant's duty to the plaintiff.

■■ Defendant next argues that the trial court erred in denying defendant's motions for directed verdict and post-trial motion for judgment *n.o.v.* or for a new trial. The proper standard requires us to ask whether all the evidence, viewed in a light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) In the present case, not only plaintiff's testimony, but also that of defendant's employees, was that plaintiff fell on a wet and slippery floor near the checkout counter while a cleanup operation was taking place. Defendant's assistant

store manager agreed that it would have been better practice to close down the aisle during the mopping. Applying the *Pedrick* test, we cannot say that when all the evidence is viewed most favorably to plaintiff that it so overwhelmingly favors defendant that no verdict against it could ever stand. *Piper v. Moran's Enterprises* (1984), 121 Ill. App. 3d 644, 459 N.E.2d 1382.

Defendant finally contends that the trial court erred in denying its post-trial motion. Contained in that motion are 19 assignments of error interspersed with other arguments in the brief. For many of these claims of error, defendant has failed to provide legal citations of authority. Since defendant has failed to comply with the standards set out by the supreme court for appellate briefs (87 Ill. 2d Rules 341(e)(1), (7)), we decline to address this remaining issue.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

WHITE, P.J., and McGILLICUDDY, J., concur.