Stephan Budovic, Plaintiff-Appellant, v. Floribert
Eschbach, Defendant-Appellee.

Gen. No. 10,597.

Opinion filed January 29, 1953. Released for publication February 18, 1953.

FRANK H. MASTERS, JR., of Joliet, and SILVIO E. PIACENTI, of Chicago Heights, for appellant.

JAMES E. BURKE, and FRANCIS A. DUNN, both of Joliet, for appellee.

MR. JUSTICE WOLFE delivered the opinion of the court.

On May 13, 1950, Floribert Eschbach was driving his new 1950 Ford car in an easterly direction on Highway No. 30 in Will county, Illinois. Riding with him were his father and uncle. Route No. 30 runs in an easterly and westerly direction and is intersected by 78th Avenue in Lincoln Estates Subdivision in Frankfort Township. Route No. 30 is a paved highway and carries heavy traffic. Seventy-eighth Avenue is an unpaved street with no sidewalks and the sides are covered with weeds and brush.

As the Eschbachs approached the intersection of 78th Avenue, Stephan Budovic, a man past eighty years of age crossed from the north to the south of Route No. 30 and was struck by the automobile of the Eschbachs. Stephan Budovic started a suit in the circuit court of Will county for damages that he is al-

leged to have sustained by the negligent operation of Floribert Eschbach's automobile. A trial was had before a jury that found the issues in favor of the defendant. The plaintiff entered a motion for a new trial, which was overruled by the court and judgment entered on the verdict in favor of the defendant, and it is from this judgment that the case was brought to this court by appeal.

It is insisted by the appellant that the judgment and verdict are against the manifest weight of the evidence. Stephan Budovic's evidence, after stating his age and residence as abstracted, is as follows: "On the day of the accident, I walked north, cross the highway, straight about two or three blocks. Then I cross the avenue on the east side coming back home. At the Lincoln Highway, (which is Route 30), I looked east, there was no automobile, and I look west, there was no car in sight, then I started to walk and make fast steps on the pavement. When I was nearly all the way across the highway, just one step to be off the pavement, there comes the car and then I don't know what happened." The cross-examination was short and is here quoted: "Q. Mr. Budovic, you never saw the car that hit you? A. What? Q. You never saw the car that hit you, did you? A. No."

Gloria Dixon, was called as a witness on behalf of the plaintiff, and testified that she was sitting in a car on 78th Avenue some distance from the Lincoln Highway facing nearly directly towards the Lincoln Highway; that she noticed Mr. Budovic on Lincoln Highway preparatory to crossing the same; that he waited until a car passed by, then he stepped out and started across the highway, when he was nearly across he was struck by the defendant's automobile. She estimated the speed of the defendant's car to be about fifty miles per hour; that the plaintiff, while crossing the intersection, walked slowly.

The defendant testified on his own behalf, said he was driving his new 1950 automobile on the occasion in question; and that he had taken his father and gone to Ottawa after his uncle to take them to another brother of his father's on a visit; that the car was new,—he had only had it for about a week and that it was in perfect running condition; that as he approached the intersection of 78th Avenue he met a trailer truck and just after the truck had passed, he noticed Mr. Budovic step out back of the trailer on the pavement, in front of his automobile; that he swerved his car slightly to the right to avoid striking Mr. Budovic, but he could not prevent the accident; that at the time the car stopped, he was then five feet from where Mr. Budovic was lying; that the only damage to his car was a slight dent in the right fender where it had struck Mr. Budovic. Henry Eschbach, the defendant's uncle, testified practically the same as the defendant, Floribert Eschbach. Conrad Eschbach also testified that the accident occurred as Floribert Eschbach had detailed it.

The defendant's witnesses all testified that just prior to the collision in question that the defendant's car was being driven at not to exceed thirty miles per hour. The only evidence to the contrary was the witness, Gloria Dixon, who was sitting in a car some distance from the highway, and she said in her opinion the defendant's car was going at the rate of fifty miles per hour. There are several photographs in evidence showing the condition of Route 30, also of 78th Avenue. From where Miss Dixon was sitting she could scarcely see the car before it entered the intersection of these two streets, and the jury might well have thought that her view and estimate of the speed would not be accurate and accepted the view of the testimony of the defendant's witnesses relative to the speed of the car.

■■ From an examination of this evidence, it is our conclusion that it amply supports the verdict of the jury. The court overruled a motion of the defendant for a directed verdict at the close of the plaintiff's case, but it seems to us that the evidence is not at all satisfactory, as to whether or not the plaintiff was guilty of contributory negligence, as a matter of law. He walked across this busy street evidently without looking, because all of the witnesses except he himself, testified that there was a car coming from the east in front of him just before he started across the street, and he says he did not see it. The defendant's witnesses all testified that it was a truck, and the defendant's car must have also been in plain view of the plaintiff at the time he started to cross the street.

■ Plaintiff tendered the following instruction, which was refused by the court: "The words 'proximate cause' whenever used in these instructions, mean that cause which, in natural, unbroken and continuous sequence, produced the result complained of. It need not be the sole cause, nor the last or nearest cause; it is sufficient if it concurs with some other cause acting at the same time which, in combination with it, causes the injury." No doubt the first sentence of this instruction properly states the law and in some cases the last sentence would be proper in defining the words "proximate cause." *Harrold v. Clinton Gas Electric Co.*, 205 Ill. App. at page 12, sustains this form of instruction. No doubt in that case the instruction was proper, but in the present case the negligence of the defendant would have to be the sole cause of the injury to the plaintiff, because he was the only one involved in driving the car, and there can be no other cause acting at the same time or in combination of which might cause the plaintiff's injury. It is stated in the case of *Chapman v. Bruton,* 325 Ill. App. 334, that an

167

instruction was not erroneous for failure to define the term ''proximate cause'' since quoted term may be understood as well as the definition thereof. No doubt the plaintiff is ordinarily entitled to an instruction defining any phrases which the jury might be in doubt as to its meaning and under some circumstances would be entitled to an instruction of what the words ''proximate cause'' legally meant, but the court did not err in refusing this instruction in the form in which it was presented.

Plaintiff's refused instruction No. 4 related to the speed of the automobile of the defendant at the time of the injury to the plaintiff. This instruction directs a verdict in favor of the plaintiff, and must be accurate in all respects. There is a serious defect in regard to this instruction. The instruction starts out as follows: ''The Court instructs you if you find from the evidence, etc.,'' and omits a necessary word which should have been inserted, to-wit: ''Preponderance of the evidence.'' The same criticism applies to plaintiff's instructions Nos. 5 and 6. Plaintiff's refused instruction No. 2 was covered by other instructions given on behalf of the defendant.

Defendant's given instruction No. 11 is as follows: ''You are instructed as a matter of law that if the defendant without fault on his part was confronted with sudden danger or apparent sudden danger, the obligation resting upon him to exercise ordinary care for his own safety does not require him to act with the same deliberation or foresight which might be required under ordinary circumstances.'' The appellant does not object to the form of this instruction, but claims that there is no evidence on which to sustain giving such an instruction. The plaintiff was entitled to have the court instruct the jury on his theory of the case and the defendant also was entitled to have the jury instructed under his theory of the case. The defendant's

168

three witnesses testified that the plaintiff walked out onto the paved highway from the back of a trailer truck, and they could not see him until he was out past the center of the highway. Certainly this presented a state of facts to which this form of instruction would be applicable, as the defendant was then confronted with a danger that he could not have foreseen until the truck had passed him, and under the circumstances we think that this instruction was properly given.

■ The only criticism of defendant's instructions Nos. 10, 11, 13, 15, 16 and 17, is that they direct a verdict, and so many should not have been given. Courts have frequently criticized the giving of too many instructions that direct a verdict, but the giving of six such instructions has never been held to be reversible error.

It is our conclusion that the verdict of the jury is supported by the great weight of evidence, and that the jury was properly instructed and the judgment appealed from should be affirmed.

*Judgment affirmed.*